Brentano Clemens, one of the Trustees under the will of David D. Wagener of the share bequeathed in trust for Susan B. Clemens for life, *v.* Richard Heckscher, August Heckscher, Austin S. Heckscher, Richard P. Heckscher and Maurice Heckscher, individually and trading as Richard Heckscher & Sons, also the Lehigh Zinc Company and Harold Clemens, Appellants.

*Trust and trustee—Conversion of securities by trustee—Duty of inquiry.*

Where securities, which show on their face that they are held in trust, are pledged by a firm of which one of the trustees is a member, as collateral security for a loan, the pledgee is put upon inquiry, and if inquiry would reveal the fact that the trustee had no power to sell or assign the security, the pledgee must account for them to the trust estate.

*Trust and trustee—Cotrustees—Breach of trust—Parties to suit.*

Where one trustee has committed a breach of trust, his cotrustees may sue to restore the property with or without the cestui que trust being made a party to the suit.

*Will—Life estate.*

Testator by his will gave a certain portion of his estate to trustees in trust to pay over to his daughter, for her sole and separate use during her natural life, the income thereof, and at her decease the principal was given " equally to and amongst all the heirs of her body, if she should have any ; the children or descendants of any one of her children who may be dead to take collectively what their parent or ancestor would have been entitled to if living, and if any die before their mother without issue the share or shares of such to go to the survivor or survivors, or their issue in the same manner, and, in default of such heirs, equally to her brothers and sisters and their heirs." *Held,* that the daughter took a life estate only.

*Trust and trustees—Power to sell—Will.*

Where a testator directs that his trustee may sell the trust estate created by his will in favor of his daughter, provided that the daughter gives her consent in writing to such sale, neither her parol consent nor her conduct and acquiescence will be considered sufficient, but her written consent is necessary to give validity to a sale by the trustees.

Argued March 30, 1898. Appeal, No. 417, Jan. T., 1897, by defendants, from decree of C. P. No. 4, Phila. Co., March T., 1890, No. 1177, on bill in equity. Before Green, McCollum, Mitchell, Dean and Fell, JJ. Affirmed.

Bill in equity to compel the transfer of securities.

The case was referred to Francis Shunk Brown, Esq., who reported as follows :

1. David D. Wagener died in Easton, Pa., in 1860, testate, and by his last will, dated February 17, 1853, he devised and bequeathed, inter alia, as follows :

" I give, devise and bequeath unto my son-in-law, Thomas H. Leary, Jr., and my friend, Andrew H. Reeder, their heirs and assigns, and to the survivor, his heirs and assigns, as trustee for my daughter Susan B., intermarried with Jacob B. Clemens, all that brick messuage and tenement," etc. " Also sixty shares of stock of the Easton Bank, fifteen shares of stock of the Bank of Pennsylvania, twenty-five shares of stock of the Commercial Bank of Philadelphia, one share of stock of the President, Managers and Company for erecting a Bridge over the River Delaware at the borough of Easton, one thousand five hundred dollars of the loans of the Lehigh Coal and Navigation Company, two thousand dollars of the six per cent loans of the United States due in the year 1867, two thousand five hundred dollars of the loans of the commonwealth of Pennsylvania, and six thousand dollars in money, which last mentioned sum I order and direct shall be loaned out on bond and mortgage, or bonds and mortgages, on good and sufficient real estate upon the trusts and conditions following, that is to say : In trust to receive and pay over to the said Susan B., wife of the said Jacob B. Clemens, for her sole and separate use, during her natural life, the rents, issues and profits of the said real estate, and the dividends and interest of the said bank stock, bridge stock, loans and pecuniary legacies as the same shall or may become due and be received, her own receipt or receipts shall be a good and sufficient discharge or discharges to the said trustee. And at her decease I give, devise and bequeath the said real estate, with the appurtenances, in fee simple, together with the said stocks, loans and pecuniary legacies, equally, to and amongst all the heirs of her body, if she should have any. The children or descendants of anyone of her children who may be dead to take collectively what their parent or ancestor would have been entitled to if living. And if any die before their mother without issue, the share or shares of such to go to the survivor or survivors, or their issue, in the same manner. And in default of such heirs equally to her brothers and sisters and their heirs. But if any

of them should die without lawful issue before their sister, Susan B. Clemens, the same to be divided among the survivor of them or their issue—the issue of any one of them dying taking in any case what the parent or ancestor could have been entitled too if living."

And he therein further provided:

"6. It is my will and I do hereby order and direct that my hereinbefore named children, to wit: Daniel Wagener, Elizabeth K. Leary, Susan B. Clemens, Sarah Eve Wagener and John O. Wagener, or any, either and every of them shall have the right, liberty and privilege at any time to occupy and possess, or to receive the rents, profits and income of the said real estate or any part thereof, and to receive the dividends and interest of the said stocks, loans and pecuniary legacies hereinbefore respectively devised and bequeathed to them in trust, etc., without passing into the hands of their respective trustees or any of them."

The said Thomas H. Leary and Andrew H. Reeder, trustees therein named, died, and in their stead the orphans' court of Northampton county, in 1884, appointed the plaintiff, Brentano Clemens and Harold Clemens, one of the defendants, trustees.

2. Among the property and securities held on September 26, 1887, by the said trustees for the purpose of the said trust were: Twenty shares of stock of the Lehigh Coal and Navigation Company, par value $1,000, certificate No. 24,099, dated September 9, 1884. Certificate of loan of Lehigh Coal and Navigation Company, No. 3,596, dated September 9, 1884, for $5,000. Certificate of loan of the Lehigh Coal and Navigation Company, No. 7,582, dated September 9, 1884, for $1,710. Certificate of the Lehigh Valley Railroad Company, No. 696, dated September 9, 1884, for two bonds, Pennsylvania and New York Canal and Railroad Company, of $1,000 each, said bonds being numbered 684 and 685. Bonds of Allegheny Valley Railroad Company, par value $3,000. Bonds Jersey City, N. J., par value $3,000.

All of these securities, with the exception of the Allegheny Valley Railroad bonds for $3,000 and the bonds of Jersey City, were issued to, and on that day stood in the name of "Harold Clemens and Brentano Clemens, trustees for Susan B. Clemens," and $2,000 of the said Allegheny Railroad bonds were issued to and then stood in the name of "Thomas H. Leary, Jr., trus-

tee for Susan B. Clemens," and the other $1,000 bond of said railroad was a coupon bond and payable to bearer. There is no evidence as to the name in which said Jersey City bonds stood.

3. On said September 26, 1887, agreements and powers of attorney to transfer all of the said securities so standing in the name of Harold Clemens and Brentano Clemens, trustees for Susan B. Clemens, were by them executed in blank and given into the possession of said Harold Clemens, or retained by him with the acquiescence of his cotrustee; the said certificate for $2,000 Allegheny Valley Railroad Company bonds so standing in the name of Thomas H. Leary, Jr., trustee, was on said date assigned by the said Harold Clemens and Brentano Clemens, trustees for Susan B. Clemens, in blank, and delivered to and retained by said Harold Clemens, and the said $1,000 bond of Allegheny Valley Railroad and Jersey City bonds on that date delivered to Harold Clemens.

4. On said September 26, 1887, Harold Clemens was a member of the firm of George K. Sistare's Sons, bankers and brokers, of Philadelphia, his copartner being W. H. M. Sistare, and on that day he delivered all of the said securities so assigned in blank, with others, to said firm, which on the same day executed the following receipt therefor :

" On demand we promise to return to H. Clemens and B. Clemens, trustees, the following securities : 20 shares Lehigh Coal and Navigation Company; $3,000 Jersey City six per cent 1899; $3,000 Allegheny Valley seven and three-tenths bonds ; $5,000 Lehigh Coal and Navigation Company six per cent; $1,710 Lehigh Coal and Navigation Company four and one-half per cent; $2,000 Pennsylvania New York Canal, seven per cent;

" And to Susan B. Clemens as follows : 54 shares Easton National Bank; 32 shares First National Bank; 42 shares Adams Express; $1,667 Lehigh Coal and Navigation six per cent; $606.67 Lehigh Coal and Navigation four and one-half per cent;

"Having deposited with them as security for above the following: 200 shares Chicago Traction at 125 ; $100 Metropolitan Surface Railroad at 80; $300 Detroit Steel Springs Company at 140.

(Signed)

" GEORGE K. SISTARE'S SONS.

"September 26, 1887."

5. The said firm of George K. Sistare's Sons immediately, the same day, September 26, 1887, upon the receipt of said securities, pledged them with the National City Bank of New York for a loan of $32,000, and again, on or about October 29, 1888, pledged them with the National Park Bank of New York for a loan of $32,000, and again, on or about August 4, 1879, pledged them with the Fourth National Bank of Philadelphia for a loan of $22,000, and again, on or about October 21, 1889, with the Bank of Manhattan Company of New York to secure checks on Commercial National Bank of Philadelphia.

6. On March 19, 1890, the securities in question were in the possession of the said Bank of Manhattan Company of New York, so pledged to secure the payment of the checks of the said firm of George K. Sistare's Sons on the Commercial National Bank of Philadelphia, and that prior to that date Harold Clemens, representing said firm, applied to August Heckscher, one of the defendants, for a loan of $24,000, for the purpose of obtaining the said securities from the said Bank of Manhattan Company, and on March 19, 1890, said Heckscher left with one Austin Heckscher (also one of the defendants) his check for $24,000, to be and which was delivered to George K. Sistare's Sons upon the receipt of the securities in question, on March 20, 1890, and on said March 19, 1890, the said August Heckscher received from said firm the warranty and agreement hereinbefore fully set forth.

7. Brentano Clemens, one of said trustees, did not intend by the assignments in blank on September 26, 1887, to sell the said securities to the firm of George K. Sistare's Sons, as the receipt given at the time hereinbefore recited expressly states, " on demand we promise to return to H. Clemens and B. Clemens, trustees," etc., the said securities, and whilst Brentano Clemens and Susan B. Clemens on said September 26, 1887, may have known that said securities were to be pledged by George K. Sistare's Sons for a loan from the National City Bank of New York, there is no evidence that they knew of the subsequent pledges thereof to either of the other pledgees hereinbefore named, including August Heckscher.

8. The two hundred shares of Chicago Traction and one hundred shares Metropolitan Surface Railroad were never delivered to Susan B. Clemens or to Brentano Clemens, but remained

after September 26, 1887, in the custody or control of George K. Sistare's Sons, and hence the trust estate did not receive any consideration for the sale alleged to have been made by the transfer in blank of September 26, 1887. The said two hundred shares of Chicago Traction and one hundred shares of Metropolitan Surface Railroad Stock were afterwards used by the firm of George K. Sistare's Sons for their own purposes, and in their place Harold Clemens testified there were substituted eight hundred or nine hundred shares of the Detroit Steel Spring and Car Company's stock and one hundred shares of Mineral Range stock, the value whereof, if any, was not proved, and these substituted stocks were never received by nor approved by Susan B. Clemens or Brentano Clemens.

9. No power of sale was given to the trustees under the will of David D. Wagener " unless the child or children for whose use, benefit and enjoyment the said real estate, loans and stocks are held shall request the same in writing." No such written request was ever made by Susan B. Clemens.

10. At the time of the filing of the bill, and now, there are living and interested in the trust created by said will, Susan B. Clemens, daughter of testator, Harold Clemens, Brentano Clemens, and Maurice Clemens, sons of said Susan B. Clemens.

11. George K. Sistare's Sons had not advanced moneys to Susan B. Clemens or to said trust estate on account of the securities so transferred on September 26, 1887, and if they had there is no evidence that she authorized in writing or otherwise the sale or pledge of the said securities in payment of her debt, nor did she specifically receive any part of the proceeds of said sale or pledge, though they amounted to many thousands of dollars more than it was claimed she was indebted to George K. Sistare's Sons.

12. On March 19 and 20, 1890, August Heckscher knew, or had received information enough to have put him on inquiry which would have so informed him, that the securities in question which he then received as collateral for the said loan of $24,000 belonged to a trust estate and all bore upon their face earmarks of a trust, except the $1,000 bond of Allegheny Valley Railroad Company and the bonds of Jersey City of the par value of $3,000.

13. It is not proved that either Brentano Clemens or Maurice

Clemens knew of the pledges of the securities in question or approved of them.

The defendants, Richard Heckscher, Austin Heckscher, Richard P. Heckscher and Morris Heckscher, individually, and as trading with August Heckscher as Richard Heckscher & Sons and the Lehigh Zinc Company, had no interest in or connection with the transfer of securities in question to August Heckscher, the transfer thereof having been to him alone and for his sole account and benefit, and the money loaned therein was his sole property.

14. The securities mentioned in the receipt of September 26, 1887, were never given in exchange to Susan B. Clemens or to Brentano Clemens. Harold Clemens says that he took them to Easton, where his mother was, but he does not state that she then received them, and he immediately brought them back to the box of George K. Sistare's Sons and afterwards used them for their benefit, and even the title to these was claimed by another; but whether it was or not is not material, for there was no such delivery of them as entitled them to be considered as having been given as a quid pro quo for the securities received by George K. Sistare's Sons, and hence title thereto did not pass to said firm.

15. Dividends on the said securities were paid to Susan B. Clemens after their receipt thereof by George K. Sistare's Sons.

CONCLUSIONS OF LAW.

It is well settled that "the party taking stock on sale or pledge from a trustee deals with it at his peril, for there is no presumption of a right to sell it, as there is in the case of an executor:" Woods's Appeal, 92 Pa. 392, and cases therein cited; and it is equally well settled that "one who has conferred upon another by a written transfer all the indicia of ownership of property is estopped to assert title to it, as against a third person who has in good faith purchased it for value from the apparent owner."

Were the securities in question, on May 10 and 20, 1890, the property of the trust estate of David D. Wagener for the purposes in his will named, or were they the property of George K. Sistare's Sons?

On September 26, 1887, certain securities, as set forth in my

findings of fact, stood in the name of Harold Clemens and Brentano Clemens, trustees for Susan B. Clemens, and another in the name of Thomas H. Leary, trustee for Susan B. Clemens, and were on that date delivered, with transfer in blank indorsed thereon, or accompanying therewith, to Harold Clemens, and a receipt of that date signed by George K. Sistare's Sons was offered in evidence to show for what purpose the said securities were so delivered. This receipt contains, inter alia, and is a promise by George K. Sistare's Sons to return on demand to Harold Clemens and Brentano Clemens, trustees, the said securities, and sets forth that there were deposited with said trustees as security for the said securities certain shares of Chicago Traction, Metropolitan Surface Railroad, and Detroit Steel Spring Company, but Harold Clemens testified, and defendant claims, that the said receipt does not express the transaction, but that the said securities were delivered to George K. Sistare's Sons to be pledged with the National City Bank of New York for a loan to that firm, and were to be treated as their property, but this was not proved; the only knowledge of Susan B. Clemens or Brentano Clemens of the uses to which the securities were to be put appears in the evidence of Harold Clemens, who testified that his mother knew of the intended pledge thereof to the National City Bank of New York, and there is not a single word of testimony that by the written transfer of September 26, 1887, or by any verbal arrangement between Susan B. Clemens, Harold Clemens, and Brentano Clemens the title to the said securities was to pass absolutely to George K. Sistare's Sons. She may have known of the first pledge, but there is no evidence that she knew of any other, and certainly the approval of Susan B. Clemens and Brentano Clemens of the first did not justify the other pledges, nor was she or he, and especially the trust estate, bound thereby.

If, as defendant contends, title to the said securities on September 26, 1887, passed to George K. Sistare's Sons, why did they continue thereafter to pay the dividends thereon to Susan B. Clemens, and what was the consideration for such transfer? But the said trustees had no right to sell or pledge the said securities to George K. Sistare's Sons, and they had no right to pledge them with others, and the transfer on May 19 or 20 to August Heckscher was unlawful and invalid. August

Heckscher was at that time put upon inquiry which would have informed him that the securities in question not only belonged to the trust created by the will of David D. Wagener for Susan B. Clemens and others in remainder, but the said securities were actually earmarked with said trust, some being in the name of " Brentano Clemens and Harold Clemens, trustees for Susan B. Clemens," and another in the name of " Thomas H. Leary, trustee for Susan B. Clemens," and Austin Heckscher, the agent of August Heckscher, if not August Heckscher himself, knew this. He therefore dealt with them at his peril : Duncan v. Jaudon, 15 Wall. 165 ; Shaw v. Spencer, 100 Mass. 382. When a certificate of stock shows a trust, the trustee has no right to transfer, except by showing an authority outside of the certificate : Bayard v. Bank, 52 Pa. 232. A person loaning money to a trustee on the pledge of trust stocks and selling the stocks for the repayment of the loan will be compelled to account for them if he have either actual or constructive notice that the trustee was abusing his trust and applying the money loaned to his own purposes.

A lender will be held to have notice when the certificate of the stock pledged shows on the face that the stock is held in trust, and when apparently the loan was for the private purposes of the trustee, and this fact would have been revealed by inquiry. The duty of inquiry is imposed on a lender lending on stocks where the certificate of them reveals a trust : Duncan v. Jaudon, supra. One holding stock as trustee has prima facie no right to pledge it to secure his own personal debt not connected with the trust, and whoever takes it as security for such debt does so at his own peril : Walsh v. Stille, 2 Parsons, 17. It was the duty of August Heckscher to have made inquiry into the trust to which the securities belonged : Gaston v. Bank, 29 N. J. Eq. 98. Notice of the trust communicated to Austin Heckscher, the agent, was notice to August Heckscher, the principal : Duncan v. Jaudon, supra. The argument that August Heckscher had a right to presume that the pledge of these securities was proper and legal, because they had been pledged to others and were then, May 19, 1890, pledged to the Bank of the Manhattan Company, is not sound. If one pledge was wrong, subsequent ones did not make it right. Surely in the misuse of trust funds, as in the other affairs of life, two wrongs (or several as in this case) cannot make a right : Duncan v. Jaudon, supra.

It is difficult to believe that with the dealings of August Heckscher with George K. Sistare's Sons, covering several years and including, just prior to May 19, 1890, a two weeks' examination of that firm's books, he did not know of the trust of which the said securities were a part, and if he did not actually know it in person on that date, he certainly did by agent on May 20, 1890, the time of their receipt. The use of the securities was a breach of trust by Harold Clemens, and August Heckscher had legal notice that the trustee was abusing his trust and applying the proceeds of the loan to his own use. The loans were for no purpose connected with the trust, but for the individual benefit of Harold Clemens and George K. Sistare's Sons, and the face of the certificates, with the exception of $1,000 of Allegheny Valley Railroad Company bonds, informed August Heckscher, when dealing with them, that they were "trust securities," and inquiry would have revealed the fact that the use to which the stock was put was unauthorized. The duty of making such inquiry was imposed on him, for it is out of the common course of business to take corporate stock held in trust as security for the trustee's own debt or for the debt of a firm of which he is a member. The party taking such stock on pledge deals with it at his peril, and it matters not whether the stock is pledged for an antecedent debt of the trustee or for moneys loaned at the time. August Heckscher either knew or ought to have known that George K. Sistare's Sons were operating with these securities on their own account, and he is chargeable with constructive notice of everything which upon inquiry he could have ascertained from either Brentano Clemens, cotrustee of Harold Clemens, or Susan B. Clemens, the cestui que trust.

The defendants' contention that the conduct of Susan B. Clemens was equivalent to a written request by the trustee to sell the said securities, and thus a good title was passed to George K. Sistare's Sons by the delivery of the certificates with the transfer signed in blank, would be plausible if a contract between the parties requiring "written consent" to alterations, etc., were in question. There are cases in which, though a written instrument may require a writing to alter, etc., it can be altered by parol, which is thus equivalent for that purpose to a writing, but I cannot find any case where a testator has

required a writing to transfer or show consent to transfer in which it has been held that such transfer can be made by parol or by conduct such as that of Susan B. Clemens in this case. The testator was solicitous for his daughter's welfare, and so solicitous that he provided that the trustees might sell at her request, but with a wisdom (if my view of this case be correct) that is almost prophetic, he further provided that her request to sell must be in writing, and this request was not so given, nor is there sufficient evidence to show her acquiescence therein, and if there were, title to these securities would not, in the absence of such written request, thereby pass.

Defendants further contend that the estate and interest given her by the will of her father became upon her discoverture by the death of her husband absolute, and that her discoverture and her right to receive and collect the income without intervention of the trustees, and the absence of any direction for or words of active trust in the trustees after her life, made the trust dry upon her discoverture, making her life estate then legal. There can be no question that if the trust had been created solely for the coverture of Susan B. Clemens and she had become discovert, the securities of said trust would have then become hers absolutely, or if they had been bequeathed to her for life with remainder to the " heirs of her body," that is, all the heirs of her body, or all the heirs of her body of a class, she would have taken absolutely by analogy to the rule in Shelley's case, but that is not the case here. The will expressly bequeathed certain real and personal property to trustees in trust, to pay over to the said Susan B. Clemens for her sole and separate use during her natural life profits of real estate and dividends and interest upon certain stocks and loans as the same were received, and at her decease the said stocks, loans, etc., were bequeathed " equally to and amongst all the heirs of her body if she should have any. The children or descendants of any one of her children who may be dead to take collectively what their parent or ancestor would have been entitled to if living, and if any die before their mother without issue, the share or shares of such to go to the survivor or survivors, or their issue in the same manner and in default of such heirs equally to her brothers and sisters and their heirs. But if any of them should die without lawful issue before their sis-

ter, Susan B. Clemens, the same to be divided among the survivor of them or their issue; the issue of any one dying taking in any case what the parent or ancestor could have been entitled to if living;" and it was further provided, "it is my will and I do hereby order and direct that my hereinbefore named children, to wit, Daniel Wagener, Elizabeth K. Leary, Susan B. Clemens, Sarah Eve Wagener and John O. Wagener or any, either and any of them shall have the right, liberty and privilege at any time to occupy and possess or to receive the rents, profits and income of the said real estate or any part thereof, and to receive the dividend and interest of the said stock loans and pecuniary legacies hereinbefore respectively devised and bequeathed to them in trust, etc., without passing unto the hands of their respective trustees or any of them." This language creates a life estate in Susan B. Clemens and no more. It expressly states that she is to receive the rent, issues, and profits, etc., "for her sole and separate use during her natural life." I do not agree with the contention of the learned counsel for defendant that by the use of the words "heirs of the body," the testator intended to create such an estate as would, by analogy of the rule in Shelley's case, be converted into a fee in Susan B. Clemens. He expressly bequeathed at her death the said stocks, loans, etc., "equally to and amongst all the heirs of her body if she should have any. The children or descendants of any one of her children who may be dead to take collectively what their parent or ancestor would have been entitled to if living, and if any die before their mother, the share or shares of such to go to the survivor or survivors, and their issue in the same manner," etc. By the words "heirs of the body," the testator meant children alive at his daughter's (Susan B. Clemens's) decease, for he immediately follows the use of said words with the words "if she should have any," referring to the time of her death, for it was at that time that the bequest to them was intended to become operative, and he thereupon further provided that "the children or descendants of any one of her children who may be dead to take collectively," etc., certainly referring to the death of children of Susan B. Clemens prior to her decease. The subsequent provision, that "if any die before their mother without issue the share of such to go to the survivor or survivors, etc., if any," can refer

to naught but children. I agree with the contention of the learned counsel for plaintiff that " the testator limits the remainder to children alive at the death of their mother and children dead at the death of their mother, leaving issue then surviving." There is no provision for a child dying childless before the mother, and the testator further bequeathed said securities " in default of such heirs equally to her brothers and sisters and her heirs," he meaning by the words " such heirs," children of Susan B. Clemens alive at her death, or descendants of any of her children then dead, and in default of such, the estate should go to her brothers and sisters and their heirs. This language clearly limits the bequest of the testator to a certain class of the heirs of the body of Susan B. Clemens, to wit: her children or the descendants of any of her dead children at her death alive, and if there be none in this class her brothers and sisters shall then take. The learned counsel for defendant has not referred to a case where such language has been held to create an estate tail convertible into a fee in the first taker, and a thorough examination into the subject has failed to discover any such decision.

David D. Wagener certainly intended to benefit not only his daughter, but also her children alive at her death or descendants of any then dead, or in default of all these, his brothers and sisters. His primary object was the daughter, then her children, or the descendants of any dead child alive at her death, he knowing that no provision would be needed for any child dying childless before the mother, and if at the death of the daughter there should be none of her children or their descendants then alive, he wished, and in fact so states, that the estate should go to his brother and sisters. Any other construction than this, it seems to me, would be to read into this will that which the testator did not intend.

If the bequest had been to Mrs. Clemens with remainder to " the heirs of her. body," and no context to show the testator's intention as to what he intended to mean by the use of these words, the contention of the learned counsel for defendant would be correct; or, if he had used the words " children " and the context had shown that thereby he meant " heirs of the body," the contention would have been correct; but in the will there is so much more to show that the use of the words, " heirs

of the body," was limited to certain children alive at the death of the mother (the first taker) and the living descendants of any then dead.

I note the evidence of Sidney Ward, Esq., the New York counsel of August Heckscher, who, when Harold Clemens offered, shortly after May 20, 1890, some real estate in settlement of a debt to said Heckscher, demanded a copy of the will of David D. Wagener, and after its receipt and perusal declined, on behalf of said Heckscher, to accept the transfer, thus showing that said Heckscher and his counsel then were of the opinion that a valid title to the real estate included in said trust could not thereunder be made.

Plaintiff contends that the transfer in blank to " bargain, sell and transfer " was notice that the holder could not pledge, but I hold that August Heckscher knew or had notice sufficient to put him on inquiry which would have informed him that the securities in question were part of a trust which the trustee had no right either to sell or pledge for the individual debt of one of them, or of the firm of which he was a member.

The learned counsel for defendant contends that the suit is defective because Susan B. Clemens and her children, Brentano, Maurice and Harold, are not joined as parties plaintiff.   To this I cannot agree.   There is no evidence that Brentano Clemens or Susan B. Clemens joined in the breach of this trust, and where one trustee has committed a breach of trust his cotrustees may sue to restore the property with or without the cestui que trust being made party to the suit: 27 Am. & Eng. Ency. of Law, p. 281, and cases there cited.

The learned counsel for defendant also contends that "Brentano and Harold Clemens, who were trustees and signed the transfer, and with their mother gave the securities to George K. Sistare's Sons for its use, of course have no equity, . . . . nor has Maurice Clemens, who knew of their use by the firm and took no action."   I have not heard sufficient evidence to prove that Brentano Clemens, with his mother, gave the securities to George K. Sistare's Sons for its use, or that Maurice Clemens knew of such use and acquiesced therein.   Harold Clemens was principal actor in these transactions, and his mother and brothers, so far as the evidence shows, knew little or nothing about them, and certainly not enough to subject them to estop-

pel in the assertion of their rights. The learned counsel for defendants complains of the character of the evidence of Brentano and Maurice Clemens, and of the failure of Susan B. Clemens to testify. It is to be regretted that all of the important witnesses on both sides seemed to have suffered loss of memory on many material matters, but be this as it may, there is abundant evidence to prove, and law to justify my conclusions of fact and law, that there is a valid trust which must be carried out according to the will of the settlor, and by which all of the securities thereof must be preserved during the lifetime of Susan B. Clemens so that they may be received by her children living at her death, and by the living descendants of any child then dead, and if no child or descendant thereof be then living, then by her brothers and sisters and their heirs, etc., and the only preventive to such a preservation of said trust estate may be by a sale by the trustees of the securities thereof upon the written request of Susan B. Clemens and that said written request or consent has not been given; that on May 20, 1890, Harold Clemens, one of the trustees (without the knowledge or authority of his cotrustees or cestui que trust, either in writing or by parol, and after several unlawful pledges thereof between September 26, 1887, and said May 20, 1890), for the use of George K. Sistare's Sons, and entirely independent of said trust, pledged to August Heckscher for a loan to said firm the following securities, part of said trust estate, which are more particularly described in my findings of fact: twenty shares of stock of Lehigh Coal and Navigation Company, par value $1,000, certificate of loan of same company for $5,000; certificate of loan of same company, $1,710; certificate of Lehigh Valley Railroad Company for two bonds of Pennsylvania and New York Canal and Railroad Company for $1,000 each; bonds of Allegheny Valley Railroad Company, par value $3,000, and bonds of city of Jersey City, N. J., par value $3,000.

All of said securities with the exception of the $1,000 bond of the Allegheny Valley Railroad Company and the bonds of Jersey City stood in the names of trustees for Susan B. Clemens.

It does not appear in whose name the $1,000 bond of the Allegheny Valley Railroad Company or the Jersey City bonds stood. The answer alleges that the former was a coupon bond

and payable to bearer; that said August Heckscher did not by said pledge obtain a valid title to said securities so standing in the name of said trustees, and has no lawful right thereto, and should return and surrender the same to said plaintiff, but as the bonds of the Allegheny Valley Railroad Company, par value $2,000, were sold May 6, 1890, for $2,225, this sum, with interest thereon from that date, should in lieu thereof be paid by said August Heckscher to said plaintiff; and that said August Heckscher did by said pledge obtain a valid title to the $1,000 bond of the Allegheny Railroad Company and to the bonds of Jersey City, par value $3,000, and as to these the bill should be dismissed.

As the defendants Richard Heckscher, Austin Heckscher, Richard P. Heckscher, and Maurice Heckscher, individually and as trading with August Heckscher as Richard Heckscher & Sons and the Lehigh Zinc and Iron Company, had no interest in or connection with the transfer of the securities in question to August Heckscher, and have not now possession or control thereof, the bill as to them should be dismissed.

On September 19, 1890, judgment pro confesso for want of an appearance was entered against Harold Clemens, one of the defendants.

I recommend the following decree:

And now,                             , it is ordered and decreed that the bill be and is hereby dismissed against the Lehigh Zinc and Iron Company and Richard Heckscher, Austin Heckscher, Richard P. Heckscher, and Maurice Heckscher, individually and as trading with August Heckscher as Richard Heckscher & Sons, and that August Heckscher reassign, surrender, and deliver to Brentano Clemens, trustee for Susan B. Clemens under the will of David D. Wagener, deceased: Twenty shares of stock of the Lehigh Coal and Navigation Company, par value $1,000; certificate No. 24,099, dated September 9, 1884; certificate of loan of Lehigh Coal and Navigation Company, No. 3,596, dated September 9, 1884, for $5,000; certificate of loan of the Lehigh Coal and Navigation Company, No. 7,582, dated September 9, 1884, for $1,710; certificate of the Lehigh Valley Railroad Company, No. 696, dated September 9, 1884, for two bonds, Pennsylvania and New York Canal and Railroad Company of $1,000 each, said bonds being numbered 684 and

685, and that said August Heckscher shall pay to said trustee the sum of $2,225 and interest thereon since May 6, 1890.

On exception the master reported, inter alia, as follows:

4. Harold Clemens testified that on September 26, 1887, he had with him (in his inside pocket) at the interview with his mother and Brentano Clemens the Chicago Traction and Metropolitan Surface Railroad Company's stock, and that he took them back with him to New York and deposited them in a box of the firm, which he called his box, until the second exchange was made, some time afterwards; but there is no evidence that his mother and brother knew he then and there had them with him, and as they did not know the fact, they did not object to their return to New York, and there is no evidence that these securities were so returned to New York and deposited with the consent of Susan B. Clemens and Brentano Clemens.

9. There was no evidence to prove the value of the "trust" securities September 26, 1887, and hence I cannot find that those claimed to have been substituted exceeded them in value. Mr. Henry Whelan, Jr., testified that according "to the official record" there was a sale of Metropolitan Traction stock in September, 1887, at $80.00 a share, and of the Chicago Traction stock in same month at $122⅞, but no date in September is fixed. The receipt of George K. Sistare's Sons of September 26, 1887, for the securities in question quotes "200 shares Chicago Traction at 125," "100 Metropolitan Surface R. R. at 80," and "300 Detroit Steel Springs Co. at 140," making a total alleged value of $37,200.

10. There is no evidence that Susan B. Clemens approved of the alleged second substitution of securities; in fact, there is not sufficient evidence to justify a conclusion that Susan B. Clemens knew of any exchange or substitution made or intended to be made.

11. I do find that George K. Sistare's Sons at the time of their failure had upon their books an account against Susan B. Clemens showing a balance due from her of more than $16,000, but there was no evidence that she had seen or approved it or that she had received the moneys therein charged against her; but the fact is, as therein appears, that sums aggregating nearly $1,300 were paid to Maurice Clemens, her son, $40.00 to Harold Clemens, her son, and $74.39 to Brentano

Clemens, her son, and nearly $1,100 to Morton Bliss & Co., and all therein charged against her, and no evidence offered to show her authority for such payments or to justify these charges against her; and the further fact is that the said firm of George K. Sistare's Sons did not hold the securities in question against this account, for the receipt of September 26, 1887, alleges that other securities were then given in exchange for those in question, and thereafter others of alleged equal value substituted in lieu of those originally given, and if this be true, as alleged, it cannot be reasonably contended that the securities in question were held by said firm as against the said account alleged to be owing from Susan B. Clemens.

I decline to find that the balance shown by the books of George K. Sistare's Sons to be owing from Susan B. Clemens is a proper "set-off against her and her son's interest respectively in those securities" for the reasons heretofore given.

12. I decline to find that George K. Sistare's Sons had "advanced moneys to Susan B. Clemens in the trust estate on account of those securities transferred September 26, 1887." How can this contention of defendants be made consistent with their claim that securities of equal value were exchanged or deposited with the trustees for those in question? It is not usual in lending money or collateral to transfer to the borrower securities or property of equal value.

14. There was no evidence of the debt of Susan B. Clemens to George K. Sistare's Sons September 26, 1887, or of the value of the securities then received by that firm from her.

17. I find that August Heckscher was informed by Harold Clemens that the securities in question had previously belonged to his mother, had stood in her name, and that they had been for years used by the firm as collateral for loans; and that August Heckscher was shown the books of the firm which showed that fact, and that the certificates bore on their face that they were originally held in trust for Susan B. Clemens only, and the transfer indorsed on the certificates was executed by Harold and Brentano Clemens, the trustees; but I decline to find that "presumably inquiry of Susan B. Clemens would only have disclosed the facts shown by the receipt of September 26, 1887." I am unable to find just what information August Heckscher would have obtained by inquiry of Susan B. Clemens, but if

Susan B. Clemens had been properly informed as to the facts, it is fair to presume that she would have advised him of the trust created by her father, and that the securities belonged to it, and George K. Sistare's Sons had no right to dispose of them; but if she would have informed him of the contents of the receipt of September 26, 1887, only, he would have learned that the securities in question were by the terms of said receipt returnable to the trustee on demand.

18. I have carefully considered this, and repeat that it is not proved that Brentano Clemens "knew of the pledges of the alleged trust securities or approved of them." Maurice Clemens may have known of them by the inspection of the books of George K. Sistare's Sons, by whom he was employed as a clerk, but it is not proved that he or Brentano Clemens approved such pledges.

Exceptions to the master's report were dismissed by the court.

*Error assigned* was decree of the court.

*George L. Crawford,* of *Crawford, Loughlin & Dallas,* for appellants.—Assuming that the securities were investments of proceeds of the original securities bequeathed by Mr. Wagener's will, that will, after S. B. Clemens's discoverture gave her the absolute ownership thereof: Quin's Est., 144 Pa. 444; Keys's Est., 36 W. N. C. 231; Grimes v. Shirk, 169 Pa. 81; Smith's App., 23 Pa. 9; Hackney v. Tracy, 137 Pa. 53; Ray v. Alexander, 146 Pa. 242; Hoff's Est., 147 Pa. 636; 2 Jarman on Wills (4th ed.), *508; Keating v. McAdoo, 180 Pa. 5; Seybert v. Hibbert, 41 W. N. C. 85.

Even if Mrs. Clemens had only a life estate, the interests of herself and children in the securities in question are the substantial interests, and in either aspect her interest, whether absolute or for life, and her children's, if any, have at all events passed to August Heckscher.

A suit upon a dry trust should be brought in the name of the cestui que trust: Cable v. Cable, 29 W. N. C. 284.

Where a cestui que trust has participated in a breach of trust he is a necessary party: Jesse v. Bennett, 6 DeG., M. & G. 609; 1 Daniell's Chanc. Pl. & Pr. *218; Mathews v. Stephenson, 6 Pa. 496.

The alleged breach of trust by Harold was his firm's use of these securities to borrow money upon, and it is of no consequence in this aspect of the case that, while the firm was permitted to retain the securities for that purpose from September 26, 1887, until after the firm's failure in 1890, without any demand for their return, the pledgees were changed from time to time, by substitution, by the firm : Borland v. Stokes, 120 Pa. 278.

*John G. Johnson,* with him *Frederick Green,* for appellee.— The securities in controversy were held under the will of Wagener upon an active trust for Susan B. Clemens for life and for contingent remaindermen : Theobald on Wills (2d. ed.), 261 ; North v. Martin, 6 Simons, 266 ; O'Rourke v. Sherwin, 156 Pa. 285 ; Robins v. Quinliven, 79 Pa. 335 ; Walker v. Milligan, 45 Pa. 180 ; Gerhard's Est., 160 Pa. 253 ; Cockins's App., 111 Pa. 26 ; Eichelberger's Est., 135 Pa. 172.

There was no valid transfer of the securities in controversy, whether they were held under the will of Wagener or for Susan B. Clemens individually : Leiper's App., 108 Pa. 377 ; Ryman v. Gerlach, 153 Pa. 197.

No indebtedness owing by the cestui que trustent to Sistare's Sons, even if any such existed, could be set up as a defense by the appellants, whether the securities were held under the will of Wagener or for Susan B. Clemens individually.

PER CURIAM, April 11, 1898 :

The master's report in this case contains a very full and satisfactory review of all the questions of fact and law arising in the present controversy, and we are convinced of its entire correctness.    We affirm the decree of the learned court below upon the findings of fact and conclusions of law contained in the report.

Decree affirmed and appeal dismissed at the cost of the appellants.