## Estate of David D. Wagener, deceased. Appeal of August Heckscher.

*Trusts and trustees—Contingent estate—Act of April* 17, 1869.

In order to give a person claiming a contingent interest in a trust estate the right to interfere in the management of the estate, the possession of the interest should be established with at least reasonable certainty, and a proceeding under the Act of April 17, 1869, P. L. 70, should not be sustained when its manifest purpose is not to protect a right, but to establish one.

Where a testator bequeaths certain securities to trustees " in trust for S.'s sole and separate use during her natural life . . . . at her decease . . . . to the heirs of her body if she should have any," and names as trustees two sons of S., and one of the trustees borrows money individually upon securities belonging to the trust estate, and so earmarked, and both trustees execute blank powers of attorney with the acquiescence of the cestui que trust, for the transfer of the securities, and subsequently the trustee who borrowed the money is removed from the trust, the assignee of the securities is not such an owner as to give him standing in the orphans' court to require the remaining trustees to show cause why he should not file an account, why he should not give additional security, and why he should not be dismissed.

Argued March 8, 1899. Appeal, No. 76, Jan. T., 1899, by August Heckscher, from decree of O. C. Northampton Co., on a petition for an account and to remove trustee. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Petition for an account and to remove trustee.

The facts of the case, as set forth in the petition and not denied in the answer, are as follows :

David D. Wagener, the testator, died in 1860 (incorrectly given in the petition as 1864), leaving a last will and testament duly proved and admitted to probate by the register of wills of the county of Northampton. In the third paragraph of said will the testator bequeathed and devised certain personal property and real estate to trustees therein named, upon the following trust: "In trust, to receive and pay over to the said Susan B., wife of Jacob B. Clemens, for her sole and separate use during her natural life, the rents, issues and profits of the said real estate, and the dividends and interest on the said bank stock, bridge stock, loans and pecuniary legacies, as the same shall or may become due and be received; her own receipt or receipts shall be a good and sufficient discharge or discharges to the said trustees. And at her decease I give, devise and bequeath the said real estate with the appurtenances, in fee simple, together with the said stocks, loans and pecuniary legacies, equally to and amongst all the heirs of her body, if she should have any. The children or descendants of any one of her children who may be dead to take collectively what their parent or ancestor would have been entitled to if living. And if any die before their mother without issue, the share or shares of such to go to the survivor or survivors, or their issue, in the same manner. And in default of such heirs equally to her brothers and sisters and their heirs. But if any of them should die without lawful issue before their sister, Susan B. Clemens, the same to be divided among the survivor of them or their issue, the issue of any one of them dying taking in any case what the parent or ancestor would have been entitled to if living."

Testator further provided in his will, paragraph 6 : "It is my will and I do hereby order and direct that my hereinbefore named children, Sarah Eve Wagener and John O. Wagener, or any, either and every of them shall have the right, liberty and privilege at any time to occupy and possess, or to receive the rents, profits and income of the said real estate or any part thereof, and to receive the dividends and interest of the said stocks, loans, pecuniary legacies hereinbefore respectively devised and bequeathed to them in trust, etc., without passing into the hands of their respective trustee or any of them."

Susan B. Clemens, the cestui que trust, is still living, and her surviving children are three, to wit: Harold, Brentano (the

. trustee) and Maurice Clemens. The trustees named in the will having died, Harold and Brentano were appointed by the orphans' court to fill the vacancies; but Harold was removed from the office of trustee by said court in 1892. Brentano, the remaining trustee, after citation at the instance of one of the sureties on the original bond, filed a new bond in the sum of $25,000, with sureties approved by the court.

On September 26, 1887, the trustees held, as a part of the fund in their hands, the following securities, to wit: twenty shares of stock Lehigh Coal & Navigation Company, par value $1,000; certificate of loan, Lehigh Coal & Navigation Company, No. 3,596, dated September 9, 1884, for $5,000; certificate of loan, Lehigh Coal & Navigation Company, No. 7,582, dated September 1, 1884, for $1,710; certificate Lehigh Valley R. R. Company, No. 696, dated September 9, 1884, for two bonds Penn. & N. Y. Canal & R. R. Company, of $1,000 each, Nos. 685 and 686; bonds of Allegheny Valley Railroad Company, par value $2,000.

These securities, except the Allegheny Valley bonds, stood in the names of Harold Clemens and Brentano Clemens, trustees for Susan B. Clemens. The Allegheny Valley bonds stood in the name of Thomas H. Leary, Jr., trustee for Susan B. Clemens.

Harold Clemens formed with W. H. M. Sistare the firm of George K. Sistare's Sons January 1, 1886, which firm continued as stated until·its failure, April 7, 1890.

SCHUYLER, P. J., filed the following opinion:

This is a citation awarded on the petition of August Heckscher against Brentano Clemens, remaining trustee of Susan B. Clemens, a daughter of the decedent, commanding the said trustee to show cause why he should not file an account of his administration of the trust, why he should not give additional security, and why he should not be dismissed. The question is whether the petitioner has such an interest in the trust as gives him a standing in court. It seems that on September 26, 1887, the said trustee and his then cotrustee, Harold Clemens, having in their possession certain securities belonging to the trust and so earmarked, executed blank powers of attorney for their transfer. On the same day the securi-

ties and blank powers of attorney were delivered by the trustees, with the acquiescence of the cestui que trust, to the firm of George K. Sistare's Sons, of which Harold Clemens was a member, to enable them to raise money for the use of the firm.

On March 19, 1890, George K. Sistare's Sons pledged the securities to the petitioner to secure a loan of $24,000, the firm at the same time delivering to the petitioner a paper writing signed by the firm, which after specifying the securities continues as follows: "We hereby warrant that all of the above securities shall be immediately available for your use as collateral and that they are a good and perfect delivery, free from any trust or lien whatsoever." This loan was negotiated by Harold Clemens, who added to the above warranty his own personal assurances that the facts set forth in the warranty were true and the petitioner avers that he parted with his money on the faith of this personal assurance. Harold and the said Brentano Clemens are sons of the said Susan B. Clemens, who is still living, and who derived title to the securities in question under her father's will. The bequest is "in trust for her sole and separate use during her natural life" and "at her decease . . . . to the heirs of her body if she should have any."

It is claimed by the plaintiff that the delivery of the securities with the blank powers of attorney to George K. Sistare's Sons, followed by the transaction of March 19, 1890, just referred to, operated as an equitable assignment to him of the individual interest of Harold Clemens in said securities, thus giving him the required standing in court. Whether that be so or not both parties concede is the vital question for present decision. An equitable assignment is defined to be "such an assignment as gives to the assignee a title, which, though not cognizable at law, equity will recognize and protect:" 6 Am. & Eng. Ency. of Law, 656. "The form is immaterial so that there be a clearly expressed intention of an immediate transfer of the right to the assignee:" Ruple v. Bindley, 91 Pa. 299.

"In order to create an equitable title or estate in the assignee the property must be in some way specifically pointed out:" Bispham's Eq. sec. 165. And where, as here, the assignment is of property to be acquired in the future, "there must be on the face of the instrument expressly' or collected from its provisions by necessary implication, language of present transfer

directly applying to the future property : " 3 Pomeroy on Equity
Juris. sec. 1290.  Here the "future property" was Harold's
individual interest in the securities.  To show that there could
have been no equitable assignment of this interest within the
above authorities, it is only necessary to refer to the fact that
in none of the negotiations was that interest even mentioned.
Indeed it does not appear that the petitioner knew at the time
he parted with his money that Harold had any individual in-
terest whatever in the securities.  Of course, if the effect of
the transaction of March 19, was to vest in the petitioner a com-
plete title to the securities, that would carry with it Harold's
individual interest in them, but for very sufficient reasons the
petitioner makes no such claims.

As if recognizing the impossibility of establishing an equi-
table assignment in the ordinary way, the petitioner has had re-
sort to the doctrine of estoppel.  If there are any authorities
that an equitable assignment can be made out in that way we
have not been referred to them and we know of none.  An as-
signment is based on contract ; an estoppel sounds in tort, and
we do not think that the former may be inferred from the latter.
Besides, an estoppel " is available only for protection, and can-
not be used as a weapon of assault :" Dickerson v. Colgrove,
100 U. S. 580.  Nor can we see the pertinency of Penna. R.
Co.'s Appeal, 86 Pa. 81, to which our attention has been invited
with so much earnestness by the learned counsel for the peti-
tioner.  The principle recognized by that case that " where one
of two innocent persons is to suffer from the tortious act of a
third, he who gave the aggressor the means of doing the wrong
must alone bear the consequences of the act " is familiar to every
lawyer, but what has that to do with the present case?  An
innocent person within this principle is one "not chargeable
with fault."  Can it be successfully claimed that the petitioner
was an innocent person?  Not if Clemens v. Heckscher, 185
Pa. 476, be the law.  In that case it was held in respect to the
very transaction now before the court, that " it was the duty of
August Heckscher to have made inquiry into the trust to which
the securities belonged," and because he did not do so it was
further held that he took no title to the securities, which he has
since surrendered to the trust in pursuance of the decree of the
court.

But let it be conceded that the petitioner is the equitable assignee of Harold's interest, does it necessarily follow that he has a standing in court? If he has, it is by virtue of the Act of April 17, 1869, P. L. 70, sec. 1, Purd. 622, which provides that "the owner of any contingent interests in the personal property of any decedent may legally require" the custodian of the property to file an account. Is the assignee of a chose in action an "owner" within the meaning of this act? The question is believed to be of the first impression. While it is true as a general proposition that such an assignee stands exactly in the shoes of his assignor and succeeds to all his rights and privileges, yet "there is no hard and fast rule on the subject. The recognition of the equitable plaintiff at all, is by virtue of the equity powers of the court and . . . . is governed by equitable principles. Each case as it arises must stand upon its own facts:" Guaranty Co. v. Powell, 150 Pa. 18. The word "owner" has a various meaning according to circumstances. Thus in Schott v. Harvey, 105 Pa. 222, where the question was whether the holder of the fee, or his tenant for years was the "owner" of certain real estate, it was held that the tenant was, and the books are full of such interpretations of the word. In order to get at its meaning in the case at bar recourse must be had to the canons promulgated for the interpretation of statutes. One of these is that "statutes are to be construed so as may best effectuate the intention of the makers, which sometimes may be collected from the cause or occasion of passing the statute:" Big Black Creek Imp. Co. v. Com., 94 Pa. 450. The "cause" and "occasion" of the act under consideration is no secret. The Supreme Court has decided that even an original owner of a contingent interest in a decedent's personal property could not cite an executor to file an account. The act of 1869 was passed "in consequence of this decision:" Keene's Appeal, 64 Pa. 273. The conclusion is irresistible that the sole object of the act was the relief of original owners. We reach the same conclusion by the application of another canon of interpretation, as follows: "There is a presumption against a legislative intent to establish a rule of action which would be attended with inconvenience:" 23 Am. & Eng. Ency. of Law, 360. Or, as the idea is differently expressed, "where the law is doubtful and not clear, the judges ought to interpret the law to be what is

most consonant to equity and least inconvenient:" Kerlin v. Bull, 1 Dall. 178. That the interpretation contended for by the petitioner would be against equity and work inconvenience is well illustrated by the present case. Here is a large trust estate which is being administered to the entire satisfaction of all the parties originally interested in it. True, the trustee has not filed an account, but that may have been because the cestui que trust did not care to incur the expense, or more probably because the trust was a private affair which she did not wish made public. The trustee's bond is ample, and the only thing that can be urged against him is that he assisted in passing over the trust securities to George K. Sistare's Sons. That was a grave mistake, but as it was done with the full assent of the cestui que trust, and without any corrupt motive, it involved no moral turpitude. Now, the petitioner is seeking to inject into this peaceful trust a tedious and expensive litigation to establish his right, for as yet we would be only at the threshold of that controversy, having nothing before us but the petition and answer, and to carry out his avowed purpose to have the trustee removed and the private affairs of the trust made public, and all this at the suit of a stranger in blood to the persons who are the objects of the decedent's bounty, and of one who might never have a dollar's worth of interest in the trust estate. We cannot believe that the legislature intended to open the door to this kind of litigation. On both of the grounds, therefore, above mentioned, we think the petitioner has no standing in court, and that his petition should be dismissed.

For this result the petitioner has only himself to blame. If ability, industry and earnestness, so conspicuously displayed in his behalf by his learned counsel, could have saved himself, he would not have lost; but he has made his own case, and it is not one for equitable relief. It seems incredible that he should have parted with his money on the faith of securities that bore on their face their own condemnation; and if he did so, it but furnishes another illustration, for we have had others in this court, of the looseness, not to say recklessness, with which transactions of the gravest import are sometimes conducted in the larger cities, by persons from whom we would have a right to expect better things.

January 23, 1899, petition dismissed.

*Error assigned* was the decree dismissing the petition.

*James W. Wilson*, for appellant.—The right to an account is secured to the owner of a contingent remainder in personal property by the provisions of the Act of April 17, 1869, P. L. 70, entitled " An act for the protection of contingent interests."

Since that act a legatee having but a contingent interest has the right to call an executor to account: 1 Rhone's Orphans' Court Practice, p. 20, sec. 26; Albertson's Est., 1 W. N. C. 188; Hartman's App., 90 Pa. 203. Under that act a contingent remainderman may cite trustees appointed in place of executors: Hartman's App., 90 Pa. 203; Dugan's Est., 15 W. N. C. 550; 3 Brewster's Practice (O. C.), sec. 4488; Smith's Est., 7 Dist. Rep. 754.

Whatever may be assigned and transferred by a properly executed instrument in the ordinary way will pass by an equitable assignment: Story's Equity Juris. sec. 1040; East Lewisburg L. & M. Co. v. Marsh, 91 Pa. 96; Ruple v. Bindley, 91 Pa. 296; Patterson v. Caldwell, 124 Pa. 461; Whelen v. Phillips, 151 Pa. 312; Lightner's App., 82 Pa. 301; Penna. R. Co.'s App., 86 Pa. 80.

*Russell C. Stewart*, with him *Frederick Green*, for appellee.— The party taking stock of a trust estate on pledge deals with it at his peril, for there is no presumption of a right to sell it, as there is in the case of an executor: Duncan v. Jaudon, 15 Wall. 165; Walsh v. Stille, 2 Parson's Select Equity Cases, 17; Bayard v. Farmers' & Mechanics' Bank, 52 Pa. 233; Livezey v. Northern Pac. R. R. Co., 197 Pa. 75; Leiper's App., 108 Pa. 377; Ryman v. Gerlach, 153 Pa. 197; Westinghouse v. German Nat. Bank, 188 Pa. 630; Garrard v. Pittsburg & Connellsville R. R. Co., 29 Pa. 158; Young v. Weed, 154 Pa. 316.

The duty of inquiry carries with it the duty of inquiry from the proper party (Leiper's App., 108 Pa. 377), and as was held in Bayard v. Farmers' & Mechanics' Bank, 52 Pa. 232, even a corporation in the event of a transfer must go to the will itself for information.

Equitable assignments operate not by way of estoppel but by way of enforcement of contract: Lennig's Est., 182 Pa. 485; Power's App., 63 Pa. 443; Patterson v. Caldwell, 124 Pa. 455; Kuhns's Est., 163 Pa. 438; East Lewisburg L. & M. Co. v. Marsh, 91 Pa. 96; Ruple v. Bindley, 91 Pa. 296.

The petitioner had no standing in the orphans' court: Johnston v. Price, 172 Pa. 427; Ahl's App., 129 Pa. 50; Hartman's App., 90 Pa. 203; Guaranty Trust & Safe Deposit Co. v. Powell, 150 Pa. 16.

OPINION BY MR. JUSTICE FELL, May 23, 1899:

The facts necessary to the understanding of the questions presented by this appeal may be briefly stated. The appellant loaned $25,000 to the firm of George K. Sistare's Sons on the pledge as collateral of securities which were held under the provisions of the will of David D. Wagener upon an active trust for the testator's daughter for life and for the remaindermen. The loan was procured and the securities pledged by Harold Clemens, one of the trustees, who was a member of the firm of George K. Sistare's Sons. Brentano Clemens, the other trustee, instituted proceedings in equity to recover the securities for the trust estate. The master found that the pledge had been made without the knowledge of Brentano Clemens or Susan B. Clemens, who had a life interest, and for a purpose not connected with the trust, and that the appellant had legal notice of the abuse of trust. The decree recommended by him, requiring a return of the securities, was made by the court of common pleas and affirmed by this Court. See Clemens v. Heckscher, 185 Pa. 476. The defendant in the proceeding mentioned is the appellant here. In substance his contention is that, notwithstanding the fact that the pledge of the securities was invalid as affecting the trust, still it constituted an assignment to him of the individual interests of Harold, Brentano and Susan B. Clemens in the securities, and that he is therefore the present owner thereof and entitled to an account. In assertion of this right, and evidently for the purpose of establishing his claim as the owner of the interests mentioned, he petitioned the orphans' court, under the act of April 17, 1869, for a citation directed to Brentano Clemens, who is now the only trustee. This appeal is from the order dismissing the petition.

The act of 1869 has received a very liberal construction in order that full effect might be given to its purpose to protect contingent interests. In Keen's Appeal, 64 Pa. 268, it was said that the owner of any possible contingent interest would come within its clear intent and spirit; and in Hartman's Appeal, 90 Pa. 203, it was held to apply to estates in the hands of trustees, although its words limit its application to estates held by executors and administrators. While there has been a latitude of construction to protect contingent interests, the act has not been and should not be extended to confer upon one who has not a clear title to an interest the right to interfere in the management of a trust estate.

The interest to be protected may be even remotely contingent, but the possession of an interest should be established with at least reasonable certainty, and a proceeding under the act should not be sustained when its manifest purpose is not to protect a right, but to establish one. We are of opinion that the petition was properly dismissed because it did not appear that the petitioner had such an interest as to bring him within the intent of the act of 1869.

The decree is affirmed at the cost of the appellant.