## Streater's Estate.

*Wills—Testamentary trustee—Sale of securities—Application of purchase-money.*

1. A trustee may generally sell the personal property belonging to his trust estate, especially if he have authority to change the securities or vary the investments, and if he sells the personal property to a purchaser who pays the purchase-money in good faith, the purchaser will take good title, although he knows of the trust and although the trustee afterwards misapplies the money.

2. Testator by will gave the residue of his estate after the death of his wife, in trust, for certain purposes. Among the assets of the estate which passed to a substituted trustee was certain bank stock, an investment made by the testator himself. A new certificate was issued in the name of the substituted trustee. The trustee sold the stock for full value to appellant, and embezzled the money. *Held,* that the trustee had power to make the sale, and that the purchaser was not responsible for the trustee's subsequent fraudulent conduct.

Argued April 15, 1915. Appeal, No. 91, January T., 1915, by B. M. Espy, from decree of O. C. Luzerne Co.,

year 1875, No. 566, directing transfer of stock to a substituted trustee in Estate of Charles Streater, deceased. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ.   Reversed.

Petition for citation to compel respondents to show cause why they should not transfer certain bank stock to the trustee of a decedent's estate.   Before FREAS, P. J.

From the record it appeared that Edna Streater Pettebone presented her petition to the Orphans' Court of Luzerne County, alleging that Charles Streater died at Wilkes-Barre in 1863, leaving a will by which he gave one-half his residuary estate, in case of certain lapses (which occurred) to his own heirs, of whom the petitioner was one; and that decedent's grandson, Charles Streater, who was the last surviving cestui que trust, died in 1911, intestate and without issue, whereby the trust created by the will terminated; that the residuary estate consisted in part of ten shares of the capital stock of the Wyoming National Bank, of the par value of fifty dollars a share; that in 1885, S. B. Sturdevant was appointed trustee under the will of Charles Streater and continued to hold that office until his death in 1909; that the said ten shares of stock, held by the trust estate, were transferred to S. B. Sturdevant, trustee of the estate of Charles Streater, and a new certificate was issued by the bank in his name; that on January 29, 1889, S. B. Sturdevant, trustee, sold and assigned the said ten shares of stock to B. M. Espy, and the old certificate was cancelled and a new one issued to the purchaser; that at the time of the sale and transfer the purchaser had notice that the stock was held by Sturdevant in trust under the will of Charles Streater; that the sale and assignment of the stock were illegal and ineffectual in law to divest the title of petitioner and her co-heirs to the stock, and the purchaser, Espy, took and has continued to hold the stock subject to the trusts created by the will of Charles Streater, that S. B. Sturdevant, the

trustee, subsequently died insolvent (some twenty years afterwards, in 1909), without assets either personally or as trustee to satisfy the claims of the Charles Streater Estate, and that a retransfer of the stock was necessary to enable his legatees to enjoy the property devised to them.

The petitioner prayed for an order on Espy requiring him to surrender his certificate for the ten shares of stock, or any equivalent certificate in his possession, for cancellation, in order that a certificate might be reissued in place thereof to the estate of Charles Streater, deceased.

Espy demurred to the petition, which was then amended, whereupon Espy filed an answer, in which he admitted that Sturdevant, as trustee, had assigned the stock, but denied that the petitioner was entitled to the relief prayed for.

The petitioner joined issue and testimony was taken and, on hearing upon bill, answer and proofs, the court made the following decree:

"And now, February 1st, 1915, upon due consideration, it is ordered, adjudged and decreed that certificate No. 196, for ten shares of the capital stock of the Wyoming National Bank of Wilkes-Barre, standing in the name of 'S. B. Sturdevant, trustee in the estate of Charles Streater,' and transferred by said trustee, on January 29, 1889, to B. M. Espy, was the property and belonged to the estate of Charles Streater, deceased, and formed a part of the corpus of the trust created in the will of said decedent; that said trustee unlawfully assigned said certificate to B. M. Espy and converted the proceeds to his own use; that said B. M. Espy had knowledge of the fact that said shares belonged to the Estate of Charles Streater, deceased, and that said trustee was without lawful authority to convert them; that it is necessary to settle the estate of said decedent that said shares be returned to his estate; and the said B. M. Espy is therefore ordered forthwith to deliver to H. G. Shupp, admin-

istrator of the Estate of S. B. Sturdevant, the deceased trustee, for purposes of final distribution, a certificate in the name of said administrator for ten shares of the capital stock of said bank, together with all dividends accrued thereon since the termination of the said trust, to wit: January 24, 1911; or if unable to deliver said certificate, then to pay to said administrator forthwith the value thereof, to wit; $3,000, together with legal interest thereon from January 24, 1911.".

The court awarded the citation and on final hearing directed respondents to transfer the stock to the substituted trustee of the Estate of Charles Streater, deceased. B. M. Espy appealed.

*Errors assigned* were findings of fact and conclusions of law and the decree of the court, and the fourth assignment which was as follows:

Fourth Assignment. The honorable court erred in his finding and conclusion in his final decree which reads as follows:

"That said trustee was without lawful authority to convert them."

*F. W. Wheaton* and *William C. Price,* for appellant. —The trustee had an implied power to sell the stock: Bohlen's Est., 75 Pa. 304.

The purchaser therefore took good title to the stock in the absence of collusion with the trustee, of which there is no evidence; it is not material that he had notice of the trust.

*J. E. Jenkins,* with him *W. N. Leach,* for appellee.— Under the will, the trustee had no power of sale, either express or implied: Woodward's Est., 8 Philadelphia 211; Security Co. v. Snow, 70 Conn. 288; Fountain v. Ravenel, 58 U. S. 369; Bremer v. Hadley, 196 Mass. 217.

Having bought with notice of the trust, the appellant is a trustee ex-maleficio: Marshall's Est. (No. 2), 138'

·Pa. 285; Petrie v. Clark, 11 S. & R. 377; Garrard v. Pittsburgh & Connellsville R. R. Co., 29 Pa. 154; Bayard v. Farmer & Mechanic's Bank, 52 Pa. 232; Sadler's App., 87 Pa. 154; Young v. Weed, 154 Pa. 316; Metzger v. Lehigh Valley Trust & Deposit Co., 220 Pa. 535; Jackson v. Thompson, 222 Pa. 232.

OPINION BY MR. JUSTICE POTTER, July 3, 1915:

The principal question here raised is whether a trustee has power, without express authority, under the terms of the trust, or an order of court, to sell bank stocks received by him from his predecessors in the trust, and by the latter from the estate of the person who created the trust. Appellee in her petition alleges that the ten shares of bank stock which came into the hands of S. B. Sturdevant, as trustee of the Estate of Charles Streater, were part of the residue of that estate, and that the trustee sold and assigned them to appellant. The court below found that "the consideration paid for the stock was about seventy dollars per share, which was its then value." It is alleged by appellee, and the court so found, that appellant either knew or was put upon notice that the stock was subject to the trust at the time he purchased it. There is no allegation that he had any knowledge or reason to believe that the trustee intended to misappropriate the proceeds of the stock, or that there was any collusion between them to defraud the estate. The court found that the appellant purchased the stock from the trustee for its full value, and that he was not responsible in any way for the trustee's subsequent fraudulent conduct.

In the will of Charles Streater he gave all the residue of his estate, including "credits, funds, securities and personal estate," to his wife for life, "with power to change said funds and securities for her own benefit, and those who from and after her death will be entitled thereto under this my will." The widow was made sole executrix of the will. After the death of the widow

testator gave one-half of the residue to his son-in-law
"upon trust to receive and collect the rents, issues and
proceeds thereof," and pay the same over, etc.   Stur-
devant was a successor of the original trustee.   While
the bank stock represented an investment originally
made by the testator himself, it was not specifically be-
queathed, but constituted a part of the general residuary
estate.   The widow did not exercise the power which she
had to change the investment, and upon her death the
stock passed into the hands of the trustee named in the
will.   The record does not show at what valuation it
was taken, but it is apparent that it was taken as part
of the trust fund instead of cash.   It does not appear
whether the stock was transferred on the books of the
bank to the original trustee, but in 1865 a new certificate
was issued to Ricketts, the substituted trustee, and in
1885 another was issued to "S. B. Sturdevant, trustee
in the Estate of Charles Streater."   It will not be con-
tended that corporate stocks are legal investments for
trust funds.   In Worrell's App., 23 Pa. 44, Mr. Justice
KNOX said (p. 48) : "It may now be considered as set-
tled law, that in Pennsylvania an investment by a guard-
ian or other trustee, unless authorized by the deed of
trust, in the stock of an incorporated company, whether
a bank, railroad, canal, manufacturing, or mining cor-
poration, cannot be made at the risk of a ward or other
cestui que trust."   In Com. v. McConnell, 226 Pa. 244,
Mr. Justice MESTREZAT, after citing several prior deci-
sions, said (p. 247) : "The doctrine thus firmly estab-
lished in this State prohibits a trustee from investing
the estate of his cestui que trust in the bonds or stocks
of a private corporation.   The people of the Common-
wealth have attempted to enforce the rule by Article III,
Section 22, of the present Constitution, which prohibits
the general assembly from authorizing the investment
of trust funds by a trustee in the bonds or stocks of any
private corporation.   Time has tested the wisdom of the
rule, and, as our cases declare, it is firmly established in

this Commonwealth." The power of a trustee to dispose of improper securities, and to invest the proceeds in legal securities, does not seem to be open to question. If this be his right, he must have an implied power of transfer, even though no such express authority be conferred in the instrument creating the trust. The power to transfer securities is incident to the proper management of any trust estate. In Kaiser's Est. (Orphans' Court Allegheny County), 33 Pitts. L. J. 62, it was held that a trustee had power to assign a mortgage received by him from the testator's estate. OVER, J., said: "It is evident that it was necessary that this personalty (including the mortgage) should be converted and the proceeds invested to support the cestui que trust, or to pay him the income; and, as the trust may continue for a number of years, that the securities should be changed or sold for the purpose of reinvesting the proceeds or applying them to meet the requirements of the trust. It follows that the purposes of the trust cannot be accomplished and it properly managed unless the trustee has such authority, and it is therefore among the general powers which are incident to the office of his trust without being named in the will." What seems to be a sound and reasonable statement of the general rule, is found in 2 Perry on Trusts (6th Ed. 1911), section 814, where it is said: "A trustee may generally sell the personal property belonging to his trust estate, especially if he have authority to change the securities, or vary the investments, and if he sells the personal property and receives the purchase-money in good faith, the purchaser will take a good title, and will be protected from loss, although the trustee afterwards misapplies the money. If it appears to the purchaser that he is purchasing a trust property, he will be put upon no inquiry, except to ascertain whether the trustee has power to change or vary the securities. If the instrument of trust is silent upon the power of varying the securities, it is to be determined upon the whole scope and purpose of the trust,

whether the trustee has in fact the power to dispose of the property." In Toronto General Trust Co. v. Chicago, Burlington & Quincy R. R. Co., 64 Hun. (N. Y.) 1, the question was as to the power of a trustee to sell and transfer railroad stock received by him as part of the trust estate. ANDREWS, J., said (p. 8) : "The rule in England and in this State, which forbids a trustee to invest trust funds in the securities of railroads and other corporations, is a most salutary one; and we think the rule is, or ought to be, that a trustee who receives trust property invested in such securities should, if he is not required to sell the same, at any rate have the right to make such sale and invest the proceeds in the same manner that he would be required to do if the trust property received by him consisted of money." This case was affirmed on the opinion of the court below, in Toronto General Trust Co. v. Chicago, Burlington & Quincy R. R. Co., 138 N. Y. 657. Under the principle illustrated by these authorities, we think the present appellant was justified in relying upon the implied power of Sturdevant as trustee to sell and transfer the shares of bank stock. And in the absence of fraud, or knowledge by the purchaser of any intention on the part of the trustee to misappropriate the proceeds of the sale, the purchaser took a good and valid title to the stock. Marshall's Est. (No. 2), 138 Pa. 285, and Clemens v. Heckscher, 185 Pa. 476, cited by the court below, were cases of the pledge of trust securities for the payment of trustee's own debts. They have no application to the facts of the case at bar. The distinction between a clear sale in open market, and an attempt to pledge trust property for the benefit of the trustee is manifest. It may be added that after a delay of some twenty-two years, it is rather late in the day to object to the transfer of a particular certificate of stock; especially is this true, in view of the fact that the trustee who made the transfer continued in that position for about twenty years, until his death. Had those interested in the estate required the

trustee to file accounts at reasonable intervals, the present cause of complaint would have been discovered many years ago, and if the trustee was in default the remedy could have been promptly, and presumably with effect, applied.

The fourth and fifth assignments of error are sustained, and the decree of the Orphans' Court is reversed. The costs of this appeal to be paid by Edna Streater Pettebone, appellee here.