## Simco's Estate.

*Lunacy — Accounts of committee — Filing of accounts — Appointment of auditor—Commissions—Counsel fees—Acts of June 13, 1836, May 28, 1907, and April 15, 1915.*

1. The Acts of May 28, 1907, P. L. 292, and April 15, 1915, P. L. 124, relating to weak-minded persons, while *in pari materia* with the lunacy Act of June 13, 1836, P. L. 589, establish a legal status differing from lunacy.

2. The regulation of the filing of accounts of a guardian of a weak-minded person under the later acts does not apply to a committee of a lunatic appointed under the Act of June 13, 1836, P. L. 589.

3. The Act of 1836 provides for the filing of an account by the committee once in three years, and oftener, if required by the court, for the information of the court and the inspection of all parties concerned, but there is no authority to appoint an auditor to pass upon such account as provided by the Act of April 15, 1915, P. L. 124, in case of the accounts of weak-minded persons.

4. Until a lunatic has died or has become restored to reason, or another committee has been appointed, there can be no one in being authorized to make a settlement or properly guard his interests; hence, it follows that accounts filed by the committee from time to time are only for the information of the court and parties who may be entitled in remainder; they should not be advertised for confirmation, as no confirmation, *nisi* or otherwise, can be made. If it appears that the committee is wasting or not properly managing the estate, those interested therein in reversion, remainder or otherwise, may apply for his removal or for additional security, as the facts may warrant.

5. If an auditor has been improperly appointed to audit the accounts of a committee in lunacy, his report will not be confirmed and his appointment will be vacated.

6. Allowance of commissions and counsel fees will not, in such case, be considered, nor will investments be approved, but all such matters will be considered by the court in separate applications properly made.

7. A committee of a lunatic is to invest the money of the lunatic by leave and under direction of the Court of Common Pleas in such stocks or upon such security as shall be approved by the court, and such investments, if *bona fide* made, are at the risk of the estate; if made otherwise, they are at the risk of the committee.

Auditor's report on account of a committee in lunacy. C. P. Schuylkill Co., Sept. T., 1919, No. 279.

BERGER, J., March 16, 1925.—Harry Joseph Simco, on Sept. 29, 1919, was adjudged a lunatic, pursuant to the provisions of the Act of June 13, 1836, P. L. 589. B. S. Simonds was on the same day appointed committee of the person and estate of the lunatic and directed to enter security in the sum of $500. The lunatic had no estate then, but had an expectancy of a considerable sum of money under the authority of the War Risk Insurance Act and the amendments thereto, and it so happened that the committee's bond, without surety, in the sum of $500 was presented to the court on Oct. 13, 1919, and approved.

The first sum of money which came into the committee's hands was $1406.45, paid Feb. 9, 1920, as compensation, and thereafter further sums were paid to him monthly, first as compensation and then as compensation and insurance, so that the total receipts of the committee for his ward under the War Risk Insurance Act, to and including July 8, 1924, according to the account filed by him, amount to $11,285.68, which, added to $1016.43 in miscellaneous receipts received during the same period, aggregate $12,302.11, to and including July 8, 1924, as of which day the committee, on Sept. 15, 1924, filed his first account in the Court of Common Pleas. The accountant, however, in the computation of the receipts as stated in the account, made an error against himself of $4.15.

The account was advertised by the prothonotary for confirmation *nisi*, and, although no exceptions to it were filed, it was never confirmed, either *nisi* or absolutely. On Nov. 10, 1924, the committee filed a petition, setting forth that he had "been requested by the United States Government to file his account of said estate," and, therefore, prayed "that the said account be examined or audited and finally confirmed." This petition was directed to be filed and ten days' notice of its filing was directed to be given to the parents of the lunatic. On Nov. 24, 1924, upon proof of service of notice of the filing of the account, the judge hearing motions, on motion of counsel for the committee, appointed George W. Gise, Esq., a member of the bar, "auditor to examine and audit the account of B. S. Simonds, committee of the estate of George Joseph Simco, and to report the same, in pursuance to the Act of April 15, 1915, P. L. 124."

The Act of May 28, 1907, P. L. 292, provides for the protection of insane persons, feeble-minded persons and epileptics, who are unable to care for their own property, by the appointment by the Court of Common Pleas of a guardian for the deficient person to care for his estate during the period of incapacity, with authority to the guardian to maintain his ward and his wife and children out of his estate until the right to take care of his own property is re-established. This act is *in pari materia* with the lunacy acts, but it establishes a legal status or condition differing from lunacy, and provides an entirely different procedure for the ascertainment of that status or condition than that provided for the establishment of lunacy. The powers of a guardian are defined in section 6 of the act, as amended by the Act of April 15, 1915, P. L. 124, by adding to section 6 a sub-section, denominated "sub-section *(b)*." A guardian, by virtue of the amendatory act, may, at his option, once in every three years, file an account of the management of the property under his care, or he can be required to file an account at any time by the Court of Common Pleas. When an account has been filed, either at the option of the guardian or by order of the court, the guardian may petition the court to have the account examined or audited and confirmed finally. The petition shall set forth the reason why the account should be examined or audited or confirmed, and the court, if the reasons set forth in the petition establish the need for an examination or audit and final confirmation of the account, may itself examine and audit the account or appoint an auditor for that purpose. After the completion of the examination or audit, a final decree of confirmation shall be entered by the court, which shall be conclusive as to all matters contained in the account, report or audit and decree, on all persons except the ward, and upon him three months after the removal of his disability.

The Act of June 13, 1836, P. L. 589, under which Simco was declared a lunatic and B. S. Simonds, the accountant, was appointed the committee of his person and estate, by virtue of section 40 thereof, requires every committee, at least once in three years, and oftener, if required by the court, to render an account of the property of the lunatic committed to his care, including the particulars of his receipts and expenditures, which account shall be filed in the office of the prothonotary for the information of the court and the inspection of all parties concerned. In Moran's Estate, 8 Dist. R. 315, the court, Criswell, P. J., refused a motion for the appointment of an auditor to pass upon exceptions to a triennial account filed by a committee of a lunatic, pursuant to section 40 of the Act of 1836. He held that he was without authority to appoint an auditor under the 41st section of the Act of 1836, because it only applies to cases where the trust has been determined by the death of the party

or otherwise, and that section 40 of the Act of 1836 did not confer power upon the court to confirm the triennial account filed by the committee, either *nisi* or absolutely, nor to examine or audit it. In reaching his conclusion he relied upon the construction placed on the 10th section of the Act of March 29, 1832, P. L. 190, relative to the duties and settlements of accounts by guardians appointed by the Orphans' Court, which contains language identical with that used in section 40 of the Act of 1860. In Lunacy of Peter Raeder, J. A. Raeder's Appeal, 167 Pa. 597, the action of Rice, P. J., sitting in the Court of Common Pleas of Luzerne County, in holding that the confirmation of the report of an auditor appointed to audit the triennial account of a committee of a lunatic was not such an adjudication as would preclude inquiry into the validity of a claim in an action at law against the ward after having been restored to reason, or in a distribution of the fund in the committee's hands as shown by his final account, was affirmed. See, also, Peters's Estate, 73 Pa. Superior Ct. 530. We are of the opinion, therefore, that the law and practice respecting the filing and the adjudication of triennial accounts by a committee of a lunatic appointed by virtue of the Act of 1836 is correctly epitomized in the syllabus to Moran's Estate, 8 Dist. R. 315, as follows: "Until a lunatic has died or shall have become restored to reason, or another committee has been appointed, there can be no one in being authorized to make a settlement or properly guard his interests; hence, it follows that accounts filed by the committee from time to time are only for the information of the court and parties who may be entitled in remainder; they should not be advertised for confirmation, as no confirmation, *nisi* or otherwise, can be made. If it appears that the committee is wasting or not properly managing the estate, those interested therein in reversion, remainder or otherwise may apply for his removal or for additional security, as the facts may warrant."

The auditor has recommended the absolute confirmation of the account of the committee, but this we cannot do for the reasons hereinbefore stated. In his report to the court, the auditor has undertaken to analyze the receipts and expenditures by the committee as shown by his account, but this analysis is inaccurate and erroneous on its face. It shows, however, that the committee has appropriated to his own use the sum of $615.10 as commissions, or 5 per cent. of the $12,302.11, with which he has charged himself, and that the committee has invested, *inter alia,* $9200 in Federal Reserve Bank Bonds, $100 in a personal loan secured by collateral, and $500 in a Miller & Co. first mortgage bond. A confirmation of the account, though without authority, would, nevertheless, indicate our approval of the charge for commissions and of the investment of $9800 of the trust funds made by the committee entirely upon his own responsibility and at his own risk. We neither approve nor disapprove at this time of the credit taken by the committee for his compensation, because that question is not properly before us. Respecting the credit claimed for $9200 invested in Federal Reserve Bank Bonds, we are constrained to say that the Federal Reserve Banks do not issue bonds and that the investments of the trustee are probably in Federal Land Bank Farm Loan Bonds or in Joint Stock Land Bank Bonds. A committee of a lunatic is to invest the money of the lunatic by leave and under direction of the Court of Common Pleas in such stocks or upon such security as shall be approved by the court, and such investments, if *bona fide* made, are at the risk of the estate; if made otherwise, they are at the risk of the committee: Section 34 of the Act of June 13, 1836, P. L. 589. As indicating the manner in which trust funds ought to be invested, see Com. *v.* McConnell, 226 Pa. 244, and Streater's Estate, 250 Pa. 328.

Simco's Estate.

The court has the power, on the application of the committee, upon good cause shown, to ratify and approve investments irregularly made *nunc pro tunc*, but no such application is before us now; hence, we neither approve nor disapprove of the committee's investments at this time.

The auditor has also recommended an allowance of $366 as counsel fees for the attorney of the committee. There is no question about our right to order the payment of a just, fair and reasonable counsel fee to the accountant's attorney commensurate with the services which he has rendered to the committee: In re Heft, A Lunatic, 8 Dist. R. 351, 352. We will dispose of the question of counsel fees, however, upon the presentation of a proper petition for their allowance. The appointment of the auditor was improvidently made, and must, therefore, be vacated, and for that reason the account and his report thereon cannot be confirmed. The accountant received and took into his possession trust funds prior to July 19, 1924, in the sum of $12,302.10, and he has received since then, if payments have continued to him at the former rate, at least $1260 more. The bond heretofore given by the committee is, consequently, entirely inadequate, and we consider a bond of $25,000, with surety to be approved by the court, to be necessary.

And now, March 16, 1925, the appointment of George W. Gise, Esq., as auditor of the account of B. S. Simonds, committee of the estate of Harry Joseph Simco, a lunatic, is hereby vacated and confirmation of the said account is hereby refused. The committee, B. S. Simonds, is hereby directed to enter into bond in the sum of $25,000, with surety to be approved by the court, conditioned for the faithful execution and performance of all and singular the duties appertaining to his trust, and duly to account according to law for all property and funds which have heretofore or may hereafter come into his hands, according to the provisions of the Act of June 13, 1836, P. L. 589.

From M. M. Burke, Shenandoah, Pa.